UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GWENDOLYN L. JONES, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | §     CIVIL ACTION H-10-1399 |
| | § |
| BP AMOCO CHEMICAL CO., | § |
| | § |
| *Defendant*. | § |

### MEMORANDUM ORDER AND FINAL JUDGMENT

Pending before the court is defendant BP Amoco Chemical Company's motion for summary judgment. Dkt. 15. After review of the motion, the response, reply, objections, and the applicable law, the motion is GRANTED.

### BACKGROUND

Plaintiff Gwendolyn Jones ("Jones" or "plaintiff") is an employee of BP Amoco Chemical Company ("BP" or "defendant"). Jones was originally hired to work for BP as a Lab Technician at its chemical plant in 1997. Dkt. 15 at 3. She was assigned to BP's Styrene unit as a Process Operator in March of 2004 based on her bid for the position. Dkt. 15-1 at 5, 7. An important part of a Process Operator's role is to ensure safe operation of his or her unit. Dkt. 15-3 at 4. To successfully bid for the Process Operator position as a Lab Technician an employee needs supervisor approval, seniority, and union membership in the chemical plant. Dkt. 19-2 at 3. Every newly hired Process Operator is required to complete in-class and field training in order to continue working as a Process Operator. Dkt. 15 at 10; Dkt. 19 at 7. However, before Jones was able to pass the required training for the Process Operator position, the Styrene unit was sold to another company.

Dkt. 15-1 at 8, 19. Consequently, in January 2007 Jones was assigned by BP to the Cold Out section of the Paraxylene unit ("PX2 unit") as a Process Operator. *Id.* at 23.

During her assignment to the PX2 unit Jones was trained by Cathy Gundermann ("Gundermann"). Dkt. 19 at 10. As part of her training, Jones was required to study training modules, observe equipment in the field covered by the modules, take written and computer-based exams, and pass field training. Dkt. 15-1 at 29. By July 2007 Michelle Kleiss ("Kleiss"), the Operations Manager, became concerned about Jones's ability to safely perform as a Process Operator because she had performed unsafely in training. For example, Gundermann stated that Jones had, *inter alia*, incorrectly hooked up a Nitrogen hose, opened a valve without permission, improperly lined up a pump for a lock out/tag out procedure, and incorrectly used a valve wrench. Dkt. 15-2 at 48–49, 51–52. Because of Jones's difficulty with the field training, she was put on a special performance plan where she was assigned to an office and required to be escorted by a supervisor when she wanted access to the unit. Dkt. 15-1 at 54–55. As part of her training under the performance plan, Jones was assigned Jack Berry ("Berry") and Joe Hockless ("Hockless") as trainers. Under the performance plan Jones was evaluated by Berry and Hockless, both of whom gave her failing evaluation scores for her field performance. Dkt. 15-3 at 36–42. In May of 2008 Jones was informed by BP Management that she would no longer be allowed to maintain the position of Process Operator and would be transferred back into the Lab Technician position. Dkt. 15-4 at 55.

Just prior to her reassignment back to the position of Lab Technician, Jones filed a complaint with BP's Office of the Ombudsman regarding her treatment under the performance plan and an investigation ensued. Dkt. 19 at 21. At some point in the summer of 2008 Jones went on short-term

disability and requested that BP pay her for half of her unused vacation benefits for that year so that she could maintain her insurance benefits as she shifted from short-term to long-term disability. *Id.* at 22. Instead, BP paid Jones for her full unused vacation benefits for the year. *Id.*

Plaintiff alleges BP discriminated against her based on sex and/or race (African-American) by putting her on the special performance plan and denying her access to field trainers during the performance plan period. She also claims that BP retaliated against her for filing a complaint with the ombudsman by causing a lapse in her insurance coverage, which she argues occurred when BP paid her for all of her unused vacation benefits, rather than for only half the her unused vacation benefits as she requested. The specific instances of alleged misconduct by BP will be set forth with more particularity as those instances are relevant to the court's analysis of the pending motion.

Defendant BP filed a motion summary judgment. Dkt. 15. Plaintiff has responded, and further briefing has occurred. Dkts. 19, 20. The motion is now ripe.

## ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up*

*Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then it is not entitled to summary judgment and no defense to the motion is required. *Id*.

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required

to believe; and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

**B. Discrimination**

    **1. Legal Standard**

Title VII of the Civil Rights Act of 1964 ("Title VII") makes it unlawful for an employer to discharge an employee because of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A plaintiff can prove intentional discrimination through either direct or circumstantial evidence. *See Urbano v. Continental Airlines Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). Direct evidence is evidence which, if believed, proves the fact without inference or presumption. *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993)). When a plaintiff offers only circumstantial evidence, the *McDonnell Douglas* framework requires the plaintiff to establish a *prima facie* case of discrimination, which, if established, raises a presumption of discrimination. *See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 179–80 (5th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S. Ct. 1817 (1973)). To establish a *prima facie* case, the plaintiff

5

must show that "(1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) others similarly situated were more favorably treated" or the plaintiff was replaced by a non-minority. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006) (quoting *Rutherford*, 197 F.3d at 184); *Jatoi v. Hurst-Eules-Bedford Hosp. Auth.*, 807 F.2d 1214, 1219 (5th Cir. 1987)).

If the plaintiff successfully establishes a *prima facie* case of discrimination, the employer must then produce a legitimate nondiscriminatory reason for its adverse employment decision. *Id.* Once the employer produces a legitimate nondiscriminatory reason, the presumption of discrimination dissipates and the burden shifts back to the plaintiff-employee to raise a genuine issue of material fact that the nondiscriminatory reason is merely pretextual in order to survive summary judgment. *Id.* To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). A plaintiff may establish pretext by showing either (1) the reason offered by the employer is untrue, or (2) the reason is true, but the plaintiff's protected characteristic was a motivating factor in the adverse decision (the "mixed-motives" alternative). *Id.*; *Keelan v. Majestco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). The plaintiff bears the ultimate burden of persuading the trier of fact, by a preponderance of the evidence, that the employer intentionally discriminated against her because of her protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219–20 (5th Cir. 2001).

### 2. Analysis.

BP first argues that plaintiff's discrimination claims based on her time in the Styrene unit occurred 950 days to 1700 days before plaintiff filed her EEOC charge and are time barred under 42 U.S.C. § 2000e-5(e).

With respect to plaintiff's claims of discrimination while she was in the PX2 unit, BP concedes that Jones is a member of a protected class, but argues plaintiff: (1) was not qualified for the position of Process Operator; (2) suffered no adverse employment action as a matter of law; and (3) has not provided sufficient evidence showing that others similarly situated were treated more favorably. BP also asserts that, even assuming that a *prima facie* case of discrimination has been established, plaintiff's failure to pass field training and show she could perform the Process Operator position safely is a legitimate, non-discriminatory reason for plaintiff being transferred off of the PX2 unit and back to the position of Lab Technician, and that plaintiff cannot establish that her failure to pass training is a pretext for discrimination or retaliation.

### a. Styrene Discrimination Claim

The court does not read plaintiff's complaint to assert a claim premised upon actions taken by BP during her time in the Styrene unit. Even if Jones were to assert a claim for alleged discrimination occurring during that time period, any such claim would be time-barred. Title VII, 42 U.S.C. § 2000e-5(e) requires claims based on race, sex, or age discrimination to be filed with the Equal Employment Opportunity Office within 300 days of the discriminatory act. *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 117 (5th Cir. 2005). The original complaint clearly states that Jones's employment in the Styrene Unit began in 2005 and ended, at the latest, in February of 2007, which is the latest date any act of discrimination could have occurred. Dkt. 1 at 2–3. Plaintiff's EEOC

claim was not filed until November 3, 2008, or more than 19 months after she left the Styrene Unit, making any claim arising from her time there manifestly untimely. Dkt. 1-1 at 3.

      **b.**      **PX2 Discrimination Claim**

            **1.**      *Plaintiff's Qualifications*

Plaintiff asserts that she was qualified for the job of Process Operator and that the defendant withheld the training necessary for her to successfully maintain that position. Defendant counters by arguing that Jones was unqualified for the position because she: (1) had no prior experience as an operator; (2) committed errors that put the safety of others at risk; and (3) failed to complete her training.

The requirements for being hired as a Process Operator were supervisor approval, seniority, and membership as a union member at the chemical plant. Thus, one hired for the position of Process Operator is qualified if they meet these minimum requirements. Jones met these requirements, and was "qualified" for the position for purposes of establishing a *prima facie* case of discrimination. After being hired, all new Process Operators must pass required training before they may continue in the Process Operator position. Therefore, once a qualified candidate is hired, the candidate must complete further training to maintain the position. BP's argument that Jones never successfully completed the training program is not, in the court's view, a basis for finding that she was not initially qualified to hold the position. Instead, Jones's admitted difficulties during the training process are more properly considered at other stages of the analysis.

            **2.**      *The Adverse Employment Action*

It is not clear from the complaint whether plaintiff alleges adverse action in the nature of a general denial of training or, more specifically, if the adverse action arises from plaintiff being

placed on a performance plan. Plaintiff states in her response to defendant's motion for summary judgment that "[w]ithout question, the issue as regards training relates primarily to the performance plan." Dkt. 19 at 29. Thus, plaintiff herself identifies the adverse action in this case as the implementation of a performance plan and plaintiff's alleged lack of access to training during the performance plan period. BP counters that, under Fifth Circuit precedent, denial of training cannot be an adverse employment action. The court agrees.

An adverse employment action may be actual or constructive. See *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999) (plaintiff was constructively demoted). However, in this case, Jones was *expressly* demoted after she failed to pass field testing for the Process Operator position, but that demotion is not the alleged adverse employment action in this case. Instead, plaintiff asserts that placing her on the performance plan and then failing to provide her with promised additional training constitutes an adverse employment action. In *Veal v. Schlumberger*, 2006 WL 237006 (S.D. Tex. Jan. 31, 2006), Judge Atlas noted the Fifth Circuit's long-standing position that employment actions that do not affect "job duties, compensation, or benefits" simply do not qualify as adverse employment actions for purposes of a discrimination claim. *Id*. at *7, quoting *Banks v. East Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir.2003). Judge Atlas could not locate, nor can this court, any Fifth Circuit case "in which an employer's alleged failure to train was held to constitute an adverse employment action in a Title VII or § 1981 discrimination or retaliation claim." *Veal*, 2006 WL 237006 at *8. Instead, the Fifth Circuit has consistently refused to find that a denial of training can constitute an adverse employment action. *Robserson v. Game Stop/Babbage's*, 152 Fed. Appx. 356, 361 (5th Cir. 2005) (no adverse employment action where plaintiff alleged she was denied training that ultimately led to her demotion); *Shackelford v. Deloitte & Touche, LLP*, 190

9

F.3d 398, 406 (5th Cir. 1999) (no adverse employment action where plaintiff was denied access to training on specialized filing software); *Dollis v. Rubin*, 77 F.3d 777, 779, 781 (5th Cir. 1995) (no adverse employment action where plaintiff was denied attendance at training conference). Plaintiff has not, therefore, alleged an adverse employment action in this case since her "performance plan" claim is premised upon an alleged lack of training that is simply not an "adverse employment action" for purposes of a Title VII discrimination claim.

### 3.  *Similarly Situated*

Plaintiff has also failed to present competent summary judgment evidence that other similarly situated non-protected employees were treated more favorably than she was. In this respect, plaintiff must identify another employee who was treated more favorably under circumstances that are *virtually identical*. *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001). Plaintiff has failed to satisfy this requirement.

Plaintiff cites Kleiss's testimony that plaintiff was the only employee subject to "something as harsh as [the performance plan] 'training' measure." Dkt. 19 at 31. However, Kleiss also testified, and plaintiff does not contest, that no other employee was placed on a similar performance plan because all other trainees had already qualified for the Process Operator position by successfully completing their field testing. Dkt. 20-1 at 5–6. Plaintiff has supplied no evidence that any other employee struggled as she did to apply their knowledge in the field, had safety incidents, or were reported to management for safety violations. Plaintiff identifies one white female employee who had some issues during training, but the performance plan for the other employee was primarily to evaluate how she would interact with other workers, and did not involve a failure on the employee's part to comprehend equipment or potential job hazards. Dkt. 20-1 at 9. Thus, the performance plan

for the alleged comparator was not at all similar to Jones's performance plan, and Jones has, accordingly, not identified a similarly situated employee who was treated more favorably that she was treated.

### 4. *Legitimate Non-Discriminatory Reason*

Even if plaintiff could make out a *prima facie* showing of discrimination, BP has offered a legitimate non-discriminatory reason for putting Jones on the performance plan—plaintiff's failure to apply knowledge and perform safely in the field. Gundermann reported that Jones "completely stalled" when anything went wrong or anything unusual came up. Dkt. 15-3 at 42. Moreover, Gundermann documented that Jones opened a valve without permission, putting herself and others at risk of injury. *Id.* at 41. Gundermann also documented that Jones improperly performed a lock out/tag out procedure and that she incorrectly hooked up a Nitrogen hose, even after being shown how to do so numerous times. *Id.* at 40–41.

The burden now shifts to Jones to establish a fact issue about whether: (1) the reason is not true, but is instead a pretext for discrimination; or (2) the reason, while true, was only part of the reason for the actions, and discrimination was a motivating factor. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). Plaintiff attempts to satisfy her burden through the first option only, and asserts that BP's proffered reason is untrue because it is supported only by Gundermann's "self-serving report and questionable deposition testimony." Dkt. 19 at 33. The only purported evidence plaintiff has to support the assertion that Gundermann's testimony is self-serving and questionable is that Gundermann signed off on one of Jones's performance reviews with "good job," while at the same time voicing concern over Jones's performance. However, Kleiss also testified that Jones was able to adequately perform her examinations on *paper*, but that she could not put that

knowledge into practice in the field. Dkt. 15-2 at 38. Moreover, numerous performance evaluations from both Hockless and Berry support Kleiss's testimony that Jones was struggling to apply her knowledge in the field. Dkt. 15-4 at 38. Therefore the evidence corroborates Gundermann's reason for removing Jones from the Process Operator position, and plaintiff has not presented evidence that would permit a finding that the performance issues were untrue. Accordingly, the court holds that defendant has presented a legitimate, nondiscriminatory reason for the action in question, and plaintiff has presented no evidence that the reason was pretext for discrimination.

## C. Retaliation

### 1. Legal Standard

Title VII's anti-retaliation provision protects an employee who is discriminated against because she has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S. Ct. 2405 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 1997). At a minimum, "in order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medine v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)). If the plaintiff makes a *prima facie* showing of retaliation, the burden of production shifts to the employer, which must "articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action."

*McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. . . . To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *Id.*

### 2. Analysis

Jones alleges that, when she became disabled from work after her transfer back to the lab, she specifically requested that only one-half of her unused vacation time be paid to her so that she could maintain insurance coverage while on leave. She alleges that BP paid her all of her unused vacation in one lump sum, which caused her to lose insurance coverage for some unspecified period of time, and that BP took this action in retaliation for her complaint of discrimination concerning her performance plan.

BP does not contest that Jones engaged in a protected activity by making her complaint to the ombudsman. Rather, BP asserts that: (1) Jones suffered no adverse employment action because she was paid for unused vacation benefits in accordance with company policy; (2) there was no lapse in Jones's insurance coverage as a result of the payment; and (3) there was no causal link between Jones's filing of her complaint with the ombudsman and the allegedly retaliatory vacation payment. The court will address each of these points below.

### a. Adverse Employment Action

BP's company policy concerning payment of unused vacation benefits specifically states as follows:

> (a) If the employee was eligible to use vacation benefits in the current calendar year, then the employee will be paid *for any remaining vacation*

> *benefits* that the employee was eligible to use in the current calendar year but which had not been used or carried over as described in Section 10(a) by December 31.

Dkt. 15-5 at 11 (emphasis added). Therefore, company policy *requires* that employees on unpaid leave who are not being terminated be paid *all* of their remaining vacation benefits. Further, plaintiff has provided no evidence that BP ever acted inconsistently with this policy. Instead, plaintiff asserts that she received what turned out to be inaccurate information from other employees that she could request a partial payment. BP's actions in paying benefits due and payable to Jones cannot be an adverse employment action, nor is it converted into an adverse employment action merely because plaintiff had an inaccurate belief that company policy permitted a partial payment of unused vacation leave.

Jones argues, however, that the adverse action in this case arises from the effect that the payment of unused vacation time had on her insurance benefits. Jones has not, however, identified any actual lapse in her benefits. Further, BP has provided the affidavit of Health and Welfare Benefits Consultant Cynthia Blackburn to the effect that company records reflect that "Jones did not have any lapse in insurance coverage." Dkt. 15-5 at 2. Plaintiff has failed to present evidence of an adverse employment action

          **b.**     **Causal Connection**

Plaintiff asserts that the close timing between her filing a complaint with the ombudsman and the alleged loss of her insurance benefits is *prima facie* evidence of a causal connection. Jones filed a complaint with the ombudsman in April 2008, the investigation concluded in October 2008, and the unused vacation time was paid out on November 14, 2008.

It is true that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'casual connection' required to make out a *prima facie* case of retaliation." *Swanson v. General Services Admin.*, 110 F.3d 1180, 1189 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993) (emphasis in original). However, a time gap of six months between the protected activity and the adverse employment action is "too great to establish retaliation based merely on temporal proximity." *Foster v. Solvay Pharm., Inc.*, 160 F. App'x 385, 389 (5th Cir. 2005) (*citing Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). In this instance the complaint with the ombudsman was filed approximately six months prior to the vacation benefits payment. Therefore, timing alone is not enough in this instance to establish a causal link. Moreover, as previously discussed, defendant made the benefits payment according to company policy, and there is no evidence in the record suggesting any other reason for the lump sum payment being made other than the express policy that required the payment to be made. Plaintiff has failed to establish a causal connection between her filing of the complaint with the ombudsman and the lump sum vacation payment.

      c.      **Legitimate Non-Discriminatory Reason**

Even assuming plaintiff established a *prima facie* case of retaliation, defendant has proffered a legitimate non-discriminatory reason for paying plaintiff for unused vacation time in one lump sum payment—BP's company policy dictates that when an employee on unpaid leave is to be compensated for unused vacation benefits, the employee be paid ***all*** remaining vacation benefits. As discussed above, plaintiff has presented no evidence that BP acted for any other reason than to comply with company policy and, therefore, she has not rebutted BP's legitimate, non-discriminatory reason for the action.

## CONCLUSION

After review of defendant's motion for summary judgment (Dkt. 15), the response, reply, objections, and the applicable law, the motion is GRANTED with respect to all of plaintiff's claims.

This is a FINAL JUDGMENT.

It is so ORDERED.

Signed at Houston, Texas on April 23, 2012.

_____
Gray H. Miller
United States District Judge